City of Henryetta Your Honor, may it please the court, my name is Thomas Mortenson. I represent the appellant in this matter, who was the plaintiff in the district court matter. I am here asking for reversal of the district court's order granting summary judgment in favor of the appellees, as the defendants in this matter, and that summary judgment issue is narrowly focused around the issue of the statute of limitations as it applies to conspiracy claim for First Amendment retaliation. And it is the resolution, I believe, of overt acts, or what would be considered an overt act, that would help resolve the case in front of the Tenth Circuit here. You refer many times to video clips in your briefing. I couldn't find them in the record. Did you include these video clips in the record? Yes, they were filed as a part of the summary judgment motion. Well, you have to have it in the appellate record. Do you know if it's I believe they were supposed to have been made a part of the record. I was unable to find them. Okay. There are multiple references that are a part of what was included in these video clips that were evidence as exhibits attached to the summary judgment motion. Well, one thing that you do in your brief is you try to incorporate by reference the arguments you made to the district court in your summary judgment motions. And of course, we don't allow that. In order to preserve an argument to us, you have to make it to us. Otherwise, everyone would do that and they'd never have any page limits or word limits. Yes, Your Honor. And in response to that, I do cite in my briefing to the specific overt acts that should have been included by the district court, namely. Okay, let's count them. Let's go. I'm sorry. Tell us. The overt act. The declaratory judgment action filed by the City of Henrietta and Ms. Clayson. Does the overt act have to have been something that would chill an ordinary person from pursuing their First Amendment rights? Absolutely, Judge. Well, don't we have controlling case law that says being named in a declaratory judgment does not meet that threshold? You're referring to Shiro versus City of Grove? Yeah. Yes, there is case law, but I believe that this case is in opposite to the case in Shiro. As a matter of fact, if you're upon review of Shiro, if you're to read the majority opinion and compare that to the dissenting opinion, it appears like there are two different cases that are going on. Yes, I would agree that in and of itself, filing a declaratory judgment action may be entirely proper, and the court reviewed there. And I wasn't really made aware through that case whether or not it was City Council packets. They were seeking a judgment on whether or not those were, those fell under the Open Records Act. And how obscure that issue may have been, I'm not sure. But in this case, there were no obscure issues to be decided by the judge in the declaratory judgment action. As a matter of fact, in the dissent in Shiro, it talks about how the motivation for that declaratory judgment action was that this person's making embarrassing statements about us, and we want to prevent him from making embarrassing statements, so we're going to file this declaratory judgment action. That appeared to be the motivation, the intent behind filing that. And so I would suggest that Shiro failed to incorporate in the actual evidence before the court and that there was substantial evidence there to at least surpass summary judgment with respect to retaliation. And that's what you have in this case. In this case, as opposed to notes, various acts outside of what they're attempting, wanting the court to decide. What act, what specific overt act was within the limitation period? Because that's what the district court had a problem with, is that none of these overt acts were within the limitation period. And the only one I think is possible is that January 31st, 2017 letter. But the district court found that there was no evidence linking FVM to the letter, and you don't challenge that on appeal. So I'm not sure how that letter's coming in at this point. I do challenge that because they are attacking the efforts of the... Where do you challenge it in your brief on appeal? That's my problem. I think you refer somewhere to some material facts that you asserted in the do it for us. Okay. I mean, if you're alleging a conspiracy and you've got to have the overt act, and you don't have anything within the limitation period, I'm not sure how you get there. Okay. It is the reference that I include in the opening brief to the attacks on the But the petition had already been signed by that time, hadn't it? And we're talking about different initiative petitions. The second one had. At the time that this letter's being circulated to residents, there is a petition being circulated, and it is the city council and their intent by this letter to Is FVM tied to this letter in any way to make it a joint action that would fall within conspiracy? Yes, Your Honor. How? The letter talks about a specific accusation in the body that talks about how the sewage cleanup efforts are false and misleading. And that's why the FVM case was pending. That's why that was being litigated. So we should just imply concerted action and FVM's involvement in that letter? I believe that was an undisputed fact in the district court that they were discussing FVM. No question what the face of the letter said, but you've got to show specific concerted acts that show the agreement between the parties. And I don't understand how the face of the letter, simply because it refers to FVM, shows a specific converted, sorry, shows a specific concerted action or agreement between the parties with respect to that letter. Okay, and that was one in the city council meetings where there was an admission what we're talking about here is the action with FVM. So now you're switching to the statement it takes the city as a whole to do this. We're now talking about the statement made at the city council meeting. Not specifically that, but that is further evidence of the city's actions in order to, and they actually say this, it's hard to imagine that city council says we need to stop his petitioning efforts. And it takes the city as a whole in order to do that. And that was evidence presented to the district court. But it is the legal harassment of the appellant in this particular case that I was discussing that is a part of the overt act. As far as the declaratory judgment is concerned, that in and of itself, the style of the case is City of Henrietta versus Howard Church. They were seeking, as opposed to Shiro where they weren't seeking damages or any costs or anything like that. In this particular case, they were seeking attorney fees. So they were seeking to chill his speech and in effect, bringing him before the court, continuing to legally harass him, was certainly evidence of that. And also the finding by the Oklahoma Court of Civil Appeals in the FVM case, the Defamation Act, their specific finding, which was made a part of this record, was that FVM filed a lawsuit in order to prevent or silence Howard Church from speaking out against city employees from the mayor. And so that litigation was pursued, legal harassment, in order to silence him from talking about the city. And that's a unique finding in this particular case because one would think, well, you have the right to sue somebody because they called you a bad name. But in this case, that's not what happened. What happened was FVM sued because he was commenting negatively about city councilmen, about the mayor, who also happened to be the administrator of the nursing home, Fountainview Manor. And it is that legal harassment that is prevalent throughout all of the conspiracy alleged in this particular case. At the beginning of this matter, and that's what I think is fundamentally important to understand about this particular case, is you have an individual that is upset about his city government not able to, I guess, fix a problem with sewage, raw sewage emanating from the sewer system. It's coming out onto the street. It's continuing to happen. And the only thing the And they help clean up their property. That's the only efforts that the city took in order to, I guess, attack this sewage system problem. And it is then that the appellant seeks open records in order to obtain information about, there's the mayor, and she's the only person that's getting any assistance with raw sewage coming out all over the place. And that begins the case. And so there is an effort by the city, as seen in a letter or an email written from the city attorney to other members, including the mayor, where they say they're not going to comply with the open records request. I'm not going to respond at all. And that, I guess, is agreed to by everyone involved. That agreement, and not only that agreement, but that agreement to not expose this business to, I guess, to any embarrassment or harassment. And all of this pertains to what claim? The First Amendment retaliation. And evidence of legal harassment, continued legal harassment, is that retaliation for First Amendment speech. Are you still pursuing the 1985 claim? Yes, Your Honor. And what's your basis for that claim? Basis is, well, and I'll cite to Beadle v. Wilson first for that, and it is the legal harassment, the filing of a legal matter, and it can be civil in nature as well. There's no prohibition. There's, for Fourth Amendment purposes, Fourth Amendment militias laws. Do your militias show race, don't you? Race, class-based discrimination, animus? Do you have any of that here? Is there racial discrimination here? What I have, not racial discrimination, no, Your Honor. But what I have is a discrimination for someone exercising their First Amendment rights, that animus, with respect to a, with respect to a specifically enumerated constitutional right. But that's not enough for a Section 1985 claim. An element of a Section 1985 claim is that some racial or otherwise class-based, invidious, discriminatory animus lay behind the conspirator's action. What do you, what did you offer for that? The, I have problems saying that word. Individuous actions are actions taken in reflection upon one's constitutional rights. Well, that's just restating your 1983 action, isn't it? It, yes. So that's your First Amendment retaliation action. I would agree that, to some extent, a lot of these claims would merge. That we do discuss. And the militias prosecution claim, our case law requires a criminal action. We don't have anything like that here. In, in Beatles versus Wilson, it discussed a vindictive prosecution, malicious prosecution, abuse of process type. I, I didn't mean to say abuse of process, but. But, but that claim is brought again under 1983, is it not? Your malicious prosecution claim? Essentially, yes, Your Honor. And Beatle was not that. It was a common law, Oklahoma case, right? It, it was a First Amendment retaliation case. Common law tort. It was a First Amendment retaliation claim. I also believe he did bring a malicious prosecution, civil malicious prosecution claim under state law as well, I believe. But, but yes, essentially, there are a lot of the different claims that kind of bleed together or legal harassment, which continued well beyond the statute of limitations period. And the, the dissent in Shiro certainly occupies a lot of time discussing what a person, an individual, as opposed to a judge, objectively, how they're chilled with respect to continuing legal harassment. And I believe I've exceeded my time, unless there are any questions. Seeing none, thank you. Your Honors, may it please the Court, my name is Barrett Powers. I represent Fountainview Manor, Inc., which has been referred to sometimes in the pleadings as FVM. I've agreed to split my time this morning with Clark Crapster, who represents the City of Henrietta, and Mayor Clayson, subject, of course, to the Court's questioning. The Court should affirm the District Court for all the reasons set forth in our brief, but also for a handful of particular reasons. And one is that there was no overact that was not time-barred in this case. The second is that, as this Court has touched upon, a malicious prosecution claim brought under Section 1983, as opposed to a state law tort counterpart, must be grounded in either the Fourth or the Fourteenth Amendment, and it must arise out of an underlying criminal prosecution. And third, a Section 1985-3 conspiracy claim has been very narrowly limited, both by the Supreme Court and this Court, to racial discrimination or some sort of other class-based invidious discrimination. Let me go back to, let's start with the January 31st, 2017 letter. If that were an overt act, it would fall within the statutory period, correct? Correct, Your Honor. Okay. Isn't it fair to infer that where this is sent by the City, when the Mayor is also the owner of FVM, that it was, in fact, an agreement to send the letter on behalf of both the City and FVM? Your Honor, I think there needs to be more evidence than simply the fact that the Mayor happens to be the owner of a private business. And if you read the letter, Your Honor, here's, I think, it is the problem the District Court had with the letter, and the reason the District Court rejected the letter as an overt act is because the language in the letter that the plaintiff is upset about. The letter quotes an allegation that the plaintiff has made publicly, and it was the plaintiff who first associated the City with the nursing home by claiming that the City was funneling resources to the nursing home. So it's the plaintiff who first associates the two, and the City does nothing more than what I think any governmental entity would do. They publicly refute the false allegation. Now, I can't understand how, essentially, the City refuting the allegation of a conspiracy is substantive evidence that there is, in fact, a conspiracy. Well, the District Court kind of got that letter wrong. It made some fact findings that were incorrect about the letter, first of all. Isn't that true? It referred to it being related to a previous audit, when, in fact, the letter stated something about it generating, objecting to generating funds or needing to generate funds to pay for the Oklahoma State Audit Inspector for a special audit that's being requested. So first of all, it was wrong about the basis of the letter. That's correct, Your Honor, but I don't think it's a material mistake by the District Court. The plaintiff was deposed in the case, and it's undisputed that the plaintiff agreed that the City had to pay for this audit. Isn't the City saying in a letter to its citizens that, oh, by the way, we've got this audit, and everybody knows it's requested by the plaintiff, and we're going to raise your monthly charges to pay for that audit that was requested by this plaintiff? Why isn't that retaliatory or potentially retaliatory? Your Honor, because... Why doesn't that chill his First Amendment rights? Well, it doesn't chill his First Amendment rights, Your Honor, because all it is is the City publicly refuting a public allegation that he's made. And it's a little, in my view, hypocritical. It's telling the public that, by the way, you're all going to pay a monthly charge because of this allegation that was made. And the plaintiff in his deposition did not dispute that the City would be required to pay for that audit. The plaintiff didn't dispute the substance of the letter that it was true. But if everyone in this small town is told this, is receiving this letter, wouldn't that chill the plaintiff's speech? I mean, we all know who the letter's talking about. You can't go downtown to the cafe, I don't think, after this one. Well, the plaintiff... I think what the Court has to keep in mind, a bit of a backdrop to this letter, is that the plaintiff is someone who injects himself into community discussions such as this. He runs for City Council. And that's all permitted. That's all permitted. Even encouraged. But, Your Honor, I can't find anywhere where a governmental entity is prohibited from refuting an allegation, a false allegation that's made about the City. If you take, I think, any governmental entity and someone says, the government, this entity, whatever it is, is funneling resources to a private entity, can the government not... Well, at this point, if it's about a future audit and not a past audit, how do you know they're false allegations at this point? The City's saying, we need to collect more money for a future audit. Right. Why do they need to attribute that to any past public allegations that the plaintiff has made? I mean, the question is, isn't there a fact question about what their motive was in sending this letter? Isn't your better argument, really, that FBM didn't have anything to do with that letter? Well, yes, Your Honor. And there is no evidence that Fountainview Manor did have anything to do with the letter. We had discovery in the case and there's no evidence linking Fountainview Manor to the letter. It's a letter that the City sent. There was never any evidence that anyone with Fountainview had any prearranged plan to send the letter, to draft the letter, to go through the contents of the letter. And again... Who made the statement at the City Council meeting that he's referring about, needing to stop the efforts? My recollection is that was Mayor Kleist. Right. Yes. What about that? And she's FBM's... She is a part owner and an administrator of Fountainview Manor. She is. And... Can we infer? I don't... I think there needs to be... There needed to be more evidence on summary judgment. I think when you look at a summary judgment standard and you look particularly at this letter, it's all speculation and conjecture. There's no evidence that there was any prearranged plan or that the intent of this letter was to chill his speech. The face of the letter, which is all we have in evidence... Well, how can you say there's no evidence it was to chill speech when she says if we can get everybody to come together to stop the petitions? I mean, the petitions are speech. Correct. So, I mean, it seems like there's an intent to chill speech. I think there's a line between intending to chill speech and a public official at a public meeting commenting on an audit and a petition. I don't think that the mayor leaves her First Amendment rights at the door when she becomes a volunteer mayor to also speak publicly about issues in front of the city. And I don't think that everything she says is just automatically attributable to Fountainview Manor, which is a corporation which has other owners, which has other interests. And, Your Honor, there is plenty of case law that talks about local officials don't leave their First Amendment rights at the door when they become a public official. Well, I think probably what's the problem here that nobody's really talking about is a conflict of interest. I mean, if she's definitely in the middle of this as the owner of this facility, the plaintiff has spoken out about the use of public monies to help repair the sewage system for that facility. And then she proceeds to say what she says in the meeting, and a letter goes out with the city letterhead. I mean, really? You don't think there's no concerted effort? I think the problem is it's sort of a circular argument, Your Honor, in this sense, that the plaintiff is the one who originally associates the two together. And at that point, it's really impossible for either the nursing home or the city to refute the allegation. By its essence, refuting the allegation, you're talking about both entities, the governmental entity and the private entity. And it's sort of a catch-22 in that the plaintiff makes this allegation publicly, that the city is funneling resources to the nursing home because the nursing home's owner is the mayor. And then when either the nursing home or the city try to say, that's false, that is not happening, he says, well, aha, you have now acknowledged a conspiracy by responding. It's sort of a catch-22 for, I think, the city and the nursing home. And I do want to just talk about a little bit the record evidence that was brought up. In his deposition, the plaintiff admitted that the only city resources he saw at this nursing home were outside the nursing home servicing a public sewer main. And he admitted in his deposition that that was their job and that there was nothing wrong with that. And it's also in the record that that sewer main serviced more than just the nursing home. So this idea that they're only assisting the mayor is just not factually accurate with the record. But, Your Honor, moving on to the malicious prosecution claim under Section 1983, the Beedle v. Wilson case I want to touch on just for a moment. It does not stand for the proposition that you can have a malicious prosecution claim under 1983 arise out of an underlying civil proceeding grounded in the First Amendment. It was a First Amendment retaliation claim in that case. It was a pro se plaintiff who described the prosecution as malicious. And that's the way the court refers to it as sort of an adjective. And then in a footnote, there's some dicta saying, you know, it's a pro se plaintiff. If we read the complaint broadly, he might be alleging a common law malicious prosecution claim. Your Honors, if there's no further questions of me, I do want to be respectful of Mr. Crapster and allow him to address the court. That's fine. Thank you. Thank you, Your Honors. With respect to some of the questions asked in regard to the letter with Mr. Powers, I wanted to point out that... Can you pull the mic closer? Sure. Is that too low? That's better. Okay. There was no evidence or any argument that I can recall that there was anything improper or unlawful about setting the $6 surcharge that went along with the utility bills. Well, I think the point is the statement in the letter, you know why or the basis for this increase in your bill is because of this audit. That's the chilling part of the letter, I think. I would say that it's what the plaintiff is alleging as the chilling aspect. I mean, I don't think anybody's debating that the charge is improper. What we're looking at is the basis for the city's action and whether or not the plaintiff's claim against you is supported. To the extent that an issue comes up as to whether or not the surcharge itself was retaliatory, it wasn't argued below. So that would not be the point there. In addition, the letter was directly responsive to the citizens petition, which raised allegations of wrongdoing against the city. So it was responding to those allegations directly, which governments are entitled to do. The federal government and state governments as well. If that were to be deemed as retaliatory action against someone making allegations, then it could cause problems in the future with future cases. Are there any other questions that the court would have for me? I don't want to waste any time. I don't see any or hear any. Okay. Well, I don't have any other points to make. Okay. Thank you. Thank you all for your arguments this morning.